LAMMERT GERDES and Another v. SARAH M. BURNHAM and Another.

January 19, 1900.

Nos.' 11,866—(189).

### Foreclosure of Mortgage—Injunction.

In an action brought to restrain the foreclosure of a real-estate mortgage under a power, on the ground that a part of the money for which the mortgage and the note secured thereby was given had not been paid over by the mortgagee to the mortgagors, and to compel an accounting between the parties as to the amount actually due, it is *held* that the facts, as found by the trial court, were supported by the evidence, and that they warranted the conclusion of law based thereon.

Action in the district court for Chippewa county by Lammert Gerdes and wife against Sarah M. Burnham, as executrix of the will of Burton A. Burnham, deceased, and Amund I. Amundson, as sheriff of said county, to enjoin defendants from proceeding with the foreclosure of a certain mortgage for $1,400 executed by plaintiffs to decedent, and for an accounting, and other relief. The case was tried before Qvale, J., who found among other things that plaintiffs had received no consideration for executing the mortgage except $393, and ordered judgment in favor of plaintiffs that except to that amount the mortgage was without consideration and void, and enjoining the foreclosure for any greater sum. From a judgment entered pursuant to the findings, defendant executrix appealed. Affirmed.

*Cobb & Wheelwright,* for appellant.

*A. J. Volstead,* for respondents.

COLLINS, J.

The facts, as they appear from the record in this action, again remind us of the business methods of the late firm of A. F. & L. E. Kelley, although the transaction involved is unlike any heretofore

before this court. The facts, as found below, were abundantly supported by the proofs, and fully justified the conclusion of law. The action was brought to restrain the foreclosure of a real-estate mortgage under the power of sale therein contained, and to compel an accounting; the plaintiff mortgagors admitting that there was due and unpaid about $400 of the mortgage debt, while the amount alleged and claimed to be due, as stated in the foreclosure notice, was in excess of $1,500. The facts, as they appeared, may be thus stated, in brief:

In 1896 the plaintiff Lammert Gerdes, a farmer, was the owner of 160 acres of land in Chippewa county, Minnesota. The Kelleys were then in business at Minneapolis, and assigned, under the insolvency law, on September 12 of that year. One of their agents was a bank located in a village near plaintiff's farm, of which M. S. Carl was cashier. Wishing to hire money, Gerdes applied to Carl, as cashier of the bank, for a loan, and the latter, on February 5, filled out a blank application, addressed to the Kelley firm, by which these plaintiffs applied for a loan of $1,400, offering as security a mortgage on the 160 acres. The application was duly signed, and then forwarded by Carl to the firm of A. F. & L. E. Kelley, at Minneapolis. This firm was then, for many years prior thereto had been, and for some months thereafter continued to be, the agents of one Burton A. Burnham, a resident of the state of Vermont, for making loans upon real-estate security, for collecting amounts thus loaned, for renewing loans, and for reinvesting moneys collected on account of loans previously made. At that time, and for at least four months subsequently, the firm had in its possession, or should have had, according to their books of account, from two to four thousand dollars of money which belonged to Burnham, and which had been received and collected for the purpose of loaning out upon real-estate security. The Kelleys then, and as such agents, prepared a note for the sum of $1,400, with coupons attached, payable to Burnham's order, and a mortgage upon plaintiffs' land, in which Burnham was named as mortgagee, and forwarded the same to Carl, that they might be properly executed and acknowledged by plaintiffs. March 23, 1896, the plaintiffs duly executed and delivered these instruments to Carl, as cashier, and

he, as was his custom when acting as agent for the Kelleys, placed the mortgage on record in the office of the register of deeds for Chippewa county. After being recorded, the mortgage was sent to the Kelleys, together with the note, and by one of the firm both papers were delivered to another agent of Burnham's, in the month of June. The Kelleys failed to transmit the money, as agreed on, to the bank, although it was charged up to Burnham on their books as of June 11. Early in the month of August, Carl made a personal call upon the Kelleys, and received from them the sum of $393, and, except as to this sum, no part of the amount of $1,400 due on account of the note and mortgage, and the sole consideration therefor, was paid to plaintiffs or to any person for them. It was retained by the Kelleys.

Burnham died prior to May, 1897, and thereafter the defendant, Sarah M. Burnham, as the executrix of his last will and testament, commenced the foreclosure above referred to. On the facts found, of which we have given an outline, the court ordered judgment in favor of plaintiff mortgagors that, except as to the sum of $393, the note and mortgage were without consideration and void; and, further, enjoining the foreclosure of the mortgage in an amount exceeding that sum, with interest. The appeal is from the judgment.

We have stated that the findings of fact were sustained by the evidence, and, if this be true, it is clear that the judgment ordered was the proper one. Counsel for defendant seem to admit that there was no dispute over the facts, but their contention is over the conclusions to be reached therefrom. We think there is no ground whatever for a difference of opinion over these facts, or as to their legal effect. The bank acted for the Kelleys in receiving and transmitting applications, in obtaining signatures to the notes and mortgages, in recording the latter, in procuring abstracts, and, finally, in sending all papers to them. It is probable that as plaintiffs intrusted the note and mortgage to Carl, as cashier, without first receiving their money, the loss would have fallen upon plaintiffs if the money had, in fact, been paid over to the bank by Burnham or his agents, the firm of A. F. & L. E. Kelley. The bank could act as agent for the Kelleys for certain purposes in connection with

78 M.—33

the loan, and at the same time be constituted plaintiffs' agent to receive the money. But this was not the situation. The plaintiffs' application for a loan was addressed to the Kelleys personally. That firm was not made plaintiffs' agent for any purpose, either by the terms of the application or otherwise. The Kelleys were Burnham's agents, and his money was in their hands for investment in farm mortgages. They agreed to pay $1,400 of it over to plaintiffs, and did not do so. Burnham obtained possession of the note and mortgage, and the executrix sought to enforce it, although it was without consideration, except as to $393. That the Kelleys, by means of certain entries on their books of account, made the amount of the note a debit item as to Burnham, and a credit item as to their agent, the local bank, does not affect or change the real transaction.

But counsel for the executrix strenuously contend that Burnham paid full consideration for plaintiffs' note and mortgage through "an agreement" made between the Kelleys and Burnham's other agent, Mr. Dowly, in June, 1896, that the Spencer and Nelson mortgages, about to be paid, should "take the place" of the plaintiffs' mortgage. But from the record it is not made to appear that any agreement was made as to this, and, if there had been, an agreement entered into between Dowly and the Kelleys, both Burnham's agents, and with which these plaintiffs had nothing to do, could not operate to discharge him from an obligation to pay over the money, or to cause it to be paid over, to plaintiffs. It appeared from the evidence that when plaintiffs applied for the loan there was an incumbrance on the land, and that, to pay off and discharge the same, plaintiffs borrowed the necessary sum of money from the bank, giving a note therefor, with the understanding with Mr. Carl, the cashier, that, when the Kelleys remitted, this note should be paid out of the proceeds of the Burnham loan. And the claim of counsel is that plaintiffs have actually received their money by reason of this arrangement. As to this, it is enough to say that Burnham's agents, the Kelleys, were to pay out of his funds and to the plaintiffs the amount of money represented by the mortgage note. This has not been done, and, through the knavery of these same agents, the note and mortgage were placed

in Burnham's possession. That the plaintiffs were able to borrow money elsewhere to relieve their needs temporarily, is their good fortune, but of no concern to the defendant executrix. Nor is it of consequence to her that the expenses of this action are borne by the bank, or that some sort of an arrangement has been made between the latter and plaintiffs respecting the temporary loan. The court below was right when making its rulings on those particular matters, as it was in its order for judgment.

Judgment affirmed.